**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| AUTOMATED CLEANING TECHNOLOGIES, INC. | § § § | |
| *Plaintiff* | § § | |
| V. | § § | CIVIL ACTION NO. <u>5:21-cv-484</u> |
| RAMCO EQUIPMENT CORPORATION | § § § | |
| *Defendant* | § § § | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiff AUTOMATED CLEANING TECHNOLOGIES, INC. ("Plaintiff" or "ACT")
files this Complaint for Declaratory Judgment ("Complaint") against Defendant RAMCO
EQUIPMENT CORPORATION ("Defendant" or "RAMCO"). ACT seeks declaratory relief
pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the absence of a contractual relationship
between the parties and declaring that ACT has not infringed on or violated any purported trade
dress rights of RAMCO.

## <u>PARTIES</u>

1.     Plaintiff ACT is Texas Corporation with its principal place of business at 16118
University Oak, San Antonio, Texas 78249.

2.     Defendant RAMCO is New Jersey Corporation with its principal place of business
at 32 Montgomery Street, Hillside, New Jersey 07205 and may be served through its registered
agent Fred Randall, at 32 Montgomery Street, Hillside, New Jersey 07205, or wherever else he
may be found.

**JURISDICTION & VENUE**

3.      This Court has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 101, *et seq*. and the Lanham Act, 15 U.S.C. § 1051, *et seq*.

4.      This Court also has diversity jurisdiction over this matter because Plaintiff and Defendant have diverse citizenship and the amount in controversy exceeds $75,000.   U.S.C. § 1332(a).  Plaintiff is a corporation located in Texas while Defendant is a New Jersey corporation.

5.      In a suit for declaratory relief, the amount in controversy is measured by the value of the object of the litigation, the extent of the injury to be prevented, or the value of the right to be protected.  *Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013).  The value here are the potential damages associated with RAMCO's impending claims against ACT for breach of contract and trade dress infringement.  ACT has received notice in the form of a pre-suit demand that RAMCO is claiming monetary damages of at least $200,000.

6.      This Court has personal jurisdiction over RAMCO because, on information and belief, RAMCO has done and is doing business in this State.  The Court has specific personal jurisdiction over RAMCO because RAMCO has had sufficient contacts with residents of this judicial district to confer personal jurisdiction over it on the Court.

**FACTUAL BACKGROUND**

7.      ACT specializes in designing and integrating industrial cleaning systems.  ACT engineers and fabricates industrial cleaning machines for various industries such as the manufacturing, medical, automotive, aerospace, energy, and military industries.  ACT's systems include direct spray, immersion, and custom washers, among others.  In the past, ACT has acted as a dealer of industrial washers as well.

8. RAMCO is a manufacturer of industrial immersion parts washers.

9. Starting in the early 1990's, now-owner of ACT, David Poirier ("Poirier"), acted as a dealer of RAMCO machines through his company at the time, Washing Equipment of Texas. Ex. A, ¶ 4 (Affidavit of David Poirier). In 1998, after selling his interest in Washing Equipment of Texas to his partner, Poirier and his wife Jennifer established Automated Cleaning Technologies, Inc. *Id*.

10. Through ACT, Poirier continued to deal RAMCO products and RAMCO continued to supply Poirier/ACT quotes for projects and sales leads. *Id*. According to RAMCO, RAMCO treated ACT as its exclusive distributor and/or dealer in Texas, Oklahoma, and northern Mexico and for all military sales. *See id*.; Ex. B (Letter dated Nov. 30, 2020). However, no written agreement addressing the parties' relationship or whether ACT was an exclusive distributor was put into place at this time, or any time. Ex. A, ¶ 4. Additionally, ACT obtained and maintained, at great expense, its own General Services Administration (GSA) Schedule to pursue military and government sales nationally by selling private labeled RAMCO machines or custom ACT machines. *Id*.

11. Over the course of the parties' relationship, RAMCO would forward sales leads to ACT. Ex. A, ¶ 5. ACT would follow up on these leads and attempt to sell RAMCO machines, if the RAMCO machines fit the needs of the specific customer. *Id*.

12. RAMCO never presented ACT with defined rules outlining territories or requiring ACT not to sell competing brands or its own custom products, especially to ACT's own prospective customers, entirely unrelated to RAMCO and sales leads generated by RAMCO. *Id*. ¶ 6.

13.     Throughout the years the parties maintained an amicable relationship, but as ACT began to grow, expand, and create more of its own custom machinery, the relationship devolved. ACT continued to diligently work to sell RAMCO machines to the RAMCO-generated leads but was also successful in selling its own machines.  As ACT became more independent of RAMCO, the relationship became more strained.  *Id*. ¶ 7.

14.     In or around October of 2020, the parties had a falling out concerning a sale they were both competing for as a result of an inquiry ACT received directly from a prior RAMCO customer.  RAMCO communicated that it would no longer conduct business with ACT.  *Id*. ¶ 8.

15.     On November 3, 2020, RAMCO, through its counsel, sent a letter to ACT containing various allegations pertaining to the relationship between the parties.  *Id*.; *see also* Ex. B.  In this letter, RAMCO alleges that the parties had a contractual agreement wherein upon receipt of an inquiry about its products in Texas, Oklahoma, northern Mexico, or for military sales, RAMCO would immediately forward the inquiry to ACT in exchange for ACT pursuing the inquiry and selling the inquirer RAMCO equipment.  Ex. *B*.  RAMCO has also asserted that there was a "long-standing agreement" between the parties that ACT would only sell RAMCO immersion washers.  *Id*.  Additionally, RAMCO alleges ACT violated what RAMCO refers to as the "RAMCO Trade Dress" by utilizing specific features RAMCO contends are specific to the RAMCO brand, in violation of the Lanham Act.  *Id*.

16.     ACT vehemently denies there was ever a contractual agreement between the parties and asserts that RAMCO's decision to use ACT as its exclusive distributor in Texas, Oklahoma, northern Mexico, and for military sales was solely of its own volition.  ACT further maintains that there was no agreement in place that would prevent ACT from manufacturing and selling its own machines, particularly to customers who were not the product of RAMCO-generated leads.

Moreover, ACT had worked diligently over the years to differentiate its machines from that of any other competitor and in no way violated any alleged trade dress.

17.     In the 90's ACT began building its own custom machines.  RAMCO was aware of this fact and collaborated with ACT on drawings and schematics for certain customers with more specialized needs.  As ACT's business increased over the years, tensions between the parties rose, ultimately leading to this dispute.

18.     ACT now brings this declaratory judgment action seeking a judgment from this Court that no contract existed between the parties and therefore there are no contractual obligations between the parties.

## DECLARATORY JUDGMENT STANDARD

19.     The Declaratory Judgment Act ("DJA" or the "Act") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

20.     A declaratory judgment provides a remedy to a party that is uncertain of its rights and wants an early adjudication without having to wait for its adversary to file suit.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

21.     The Act "does not create a substantive cause of action," however, and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law*." Metropcs Wireless, Inc. v. Virgin Mobil USA, LP*, No. 3:03-CV-1658-D, 2009 U.S. Dist. LEXIS 88527, at * 59 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  It is an authorization that gives federal courts broad, "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

## COUNT 1
### Declaratory Judgment – No Contract and No Enforceable Contractual Rights Exist

22.     ACT incorporates the foregoing paragraphs by reference as though set forth fully herein.

23.     ACT seeks declaration that no contract, either written or verbal, existed between the parties and therefore, no contractual rights exist between the parties.

24.     ACT is not in possession of any written agreement between the parties and has no knowledge of such agreement.  Ex. A, ¶ 4, 9.  To date, RAMCO has not produced or provided any evidence of any written agreement between the parties, and in fact, has conceded there is no writing governing the relationship between the parties.  *Id.*

25.     At no time did any written or verbal contracts exist between the parties.  RAMCO has alleged an exclusive distribution agreement existed, but their past conduct is in direct contradiction to this assertion when in fact, at various time during the parties' relationship, RAMCO allowed other dealers to ship machines or advertise for RAMCO sales in what are alleged to be ACT's exclusive territories.  *Id.*  Further, the parties never agreed, verbally or in writing, that ACT would only sell RAMCO immersion washers.  *Id.*

26.     Whether a valid and enforceable contract has been formed is a question of law. *Tyler v. Citi-Residential Lending, Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011).

27.     To be valid and enforceable contract, the following elements must be present: (1) an offer, (2) an acceptance in strict compliance with the terms of an offer, (3) a meeting of the minds, (4) communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent that it be mutual and binding on both parties, and (6) consideration. *Perry v. U.S. Bank, N.A.*, No. H-13-3362, 2014 U.S. Dist. LEXIS 93502, 2014 WL 3407077 at *3 (S.D. Tex. Jul. 9, 2014).

28.    "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind."  *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

29.    Here, there was undoubtedly no meeting of the minds. Ex. A, ¶ 9.  RAMCO claims ACT should have been selling only RAMCO immersion washers throughout their relationship; however, ACT has been manufacturing its own immersion-type machines for over fifteen years. *Id*. ¶ 7.  Additionally, ACT never had any expectation that it would be the exclusive distributor of RAMCO products in certain territories, especially because RAMCO's conduct did not reflect that they were operating within the confines of an exclusive agreement.  *Id*. ¶ 4.  RAMCO simply continued to request ACT pursue its leads due to ACT's history of success and customer satisfaction. *Id*.

30.    Alternatively, even if there was a verbal agreement between the parties, such agreement would be barred by the statute of frauds as it would be impossible to be performed within one year.  *See* Tex. Bus. & Com. Code § 26.01(b)(6).  RAMCO's allegations reference the alleged agreement with ACT as an ongoing agreement, and in fact have stated that this agreement was in place for several years.  Ex. B.

31.    For the above stated reasons, ACT respectfully requests this Court issue a declaration that no contract, either verbal or written, exists between the parties and that no RAMCO has no enforceable contractual rights against ACT.

## COUNT 2
### Declaratory Judgment – No Infringement of Any Purported Trade Dress Rights

32.    ACT incorporates the foregoing paragraphs by reference as though fully set forth herein.

33.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, ACT requests the declaration of the Court that ACT's machines do not infringe and have not infringed any purported trade dress rights of RAMCO.

34.     Trade dress refers to the image and overall appearance of a product. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 812 (5th Cir. 1989). The Lanham Act prohibits passing off goods or services as those of a competitor by employing substantially similar trade dress which is likely to confuse consumers as to the sources of the product. *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).

35.     The Fifth Circuit recognizes two distinct sets of elements in a trade dress infringement claim. "First, the trade dress of a product may be protected as an unregistered trademark if it is nonfunctional, distinctive, and has acquired a secondary meaning. Second, a finding of infringement requires a consideration of the likelihood of confusion." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994).

36.     Through the parties' pre-litigation correspondence, RAMCO has identified four specific features of ACT's machines which it contends violate the RAMCO trade dress:



37. The accused features are non-protectable functional features and/or are ornamental features. Ex. A, ¶ 10. Thus, to the extent that any assertion by RAMCO might be considered an assertion of trade dress infringement, the functional and/or ornamental features cannot infringe any such trade dress because these rights do not subsist in functional and/or non-distinctive features.

38. Upon information and belief, none of RAMCO's product configurations have acquired any distinctiveness in the marketplace. *Id*. Thus, the trade dress allegations again lack merit.

39.     Moreover, assuming, *arguendo*, that RAMCO might enjoy some form of trade dress rights, the accused features would not be likely to cause any consumer confusion and thus do not infringe any purported rights.  *Id.*  Both the ACT and RAMCO products are targeted at a fairly limited and sophisticated market, leading to a decreased likelihood of consumer confusion. *Id.*; *see, e.g.*, *Eng'g Dynamics, Inc.*, 26 F.3d at 1350 (noting "trade dress is largely irrelevant when sophisticated users decide which [product] to purchase").  RAMCO can present no evidence of any instances of actual confusion between the ACT and RAMCO products.  Ex. A, ¶ 11.  Further, ACT has actively differentiated its products through its marketing efforts.  *Id.*; *see also* https://www.actclean.com/immersion-washers/#ImageGallery.

40.     For the above stated reasons, ACT respectfully requests this Court issue a declaration that ACT has not and does not infringe any purported trade dress rights of RAMCO.

## ATTORNEYS' FEES

41.     ACT has retained the firm of Espey & Associates, PC to represent it in this action and has agreed to pay the firm reasonable and necessary attorneys' fees.  An award of reasonable and necessary attorneys' fees to Plaintiff would be equitable and just.

## PRAYERS FOR RELIEF

WHEREFORE, ACT prays for:

(a)  A declaration that no contract, written or verbal, exists between ACT and RAMCO;

(b)  A declaration that RAMCO has no enforceable contractual rights against ACT;

(c)  A declaration that ACT has not and does not infringe any purported trade dress rights of RAMCO;

(d)  An award to ACT of its costs and attorneys' fees;

(e)  Such other relief as this Court or a jury may deem proper and just under the circumstances.

## JURY DEMAND

ACT demands a trial by jury on all issues so triable.

Respectfully submitted,

**ESPEY & ASSOCIATES, PC**
12400 San Pedro Avenue, Suite 200
San Antonio, Texas  78216
Telephone:       (210) 404-0333
Telecopier:      (210) 404-0336

By:_____
RICHARD W. ESPEY
State Bar No. 06667580
espeyservice@lawespey.com

**ATTORNEYS FOR PLAINTIFF**